Filed 3/3/16  Lo v. Ma CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAUL LO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ALEX MA,<br><br>Defendant and Respondent. | B256812<br><br>(Los Angeles County<br>Super. Ct. No. EC061042) |

APPEAL from an order of the Superior Court of Los Angeles County. William D. Stewart, Judge.  Affirmed.

Thomas Business Group, Stephan J. Thomas, Michael Liu, and Robert D. Lipscomb, for Plaintiff and Appellant.

Cole Pedroza, Joshua C. Traver and Cassidy C. Davenport; Fierstadt & Mans, Jack A. Fierstad and Brandon A. Carroll, for Defendant and Respondent.

\*       \*       \*

Prior to filing suit, a putative plaintiff sends an email to "several individuals" within the relevant business community accusing a putative defendant of misconduct. After the plaintiff sues defendant for some (but not all) of that alleged misconduct, the defendant cross-claims for libel based on the email. Is the email a "writing made in connection with an issue under consideration or review by a . . . judicial body" that renders it subject to the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (e)(2))?[1] On the facts of this case, we conclude it is not. We accordingly affirm the trial court's order denying the plaintiff's anti-SLAPP motion and awarding $7,200 in attorney's fees.

## FACTS AND PROCEUDRAL BACKGROUND

Plaintiff, cross-defendant, and appellant Paul Lo (Lo) and defendant, cross-complainant, and respondent, Alex Ma (Ma) are real estate developers who have collaborated on projects for more than a decade.

In August 2013, Lo sued Ma for breach of an oral contract, fraud, conversion, and rescission for Lo's misconduct with respect to three of their real estate development projects—one in Monterey Park, one in Alhambra, and one in Hemet. More specifically, the complaint alleged that Ma breached his promises to repay loans Lo made for the Monterey Park project in April 2013 and manipulated that project's books to make the unpaid balance on the loan look smaller; that Ma misappropriated money from the Alhambra property for his personal use; and that Ma breached his promise to award Lo a 20 percent interest in the Hemet project.

Just one month earlier, in July 2013, Lo had sent out an email to "several individuals within the real estate development community, including investors and business partners that had worked with and/or were currently working with [Ma] on development projects." In the email, Lo purported to "share" with the recipients a "story about what happened between [Ma] and [him] recently." The email proceeded to detail Ma's alleged misconduct with respect to the Monterey Park, Alhambra, and Hemet

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

projects, and noted that these issues "will be resolved through legal actions in the future." The email also accused Ma of misconduct with regard to a Baldwin Park project, including over-inflating costs, taking "cash kickback[s] under the table," converting the project's materials and workers for his personal use, firing the whistleblower who reported the misconduct to Ma, and asking Ma to lie to the IRS.

Ma answered Lo's complaint and also filed a cross-complaint for libel based on the alleged false statements in the email.

Lo filed an anti-SLAPP motion to strike Ma's libel cross-complaint, arguing that the email constituted activity protected by the anti-SLAPP statute because it furthered "the exercise of [his] . . . constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)) and was a "writing made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)).

In a 10-page ruling, the trial court denied the anti-SLAPP motion. The court concluded that the email did not constitute "protected activity" under the anti-SLAPP statute for two reasons: Its content was not "in connection with a public issue or an issue of public interest" because "statements about a defendant's business practices [are] of interest only to the defendant and to those affect[ed] by those practices," and because Lo failed to "identify any issue before a judicial body with which" the email was "connected."

The trial court also determined that Lo's anti-SLAPP motion was frivolous. The court noted that Ma's pleading all but precluded a finding that Lo's email was "protected activity" and that Lo did not accompany his motion with any evidence that might bring Ma's libel claim within the definition of "protected activity." The court accordingly awarded $7,200 in attorney's fees.

Lo timely appeals.

3

## DISCUSSION

### I.    Denial of Anti-SLAPP Motion

As its name suggests, the anti-SLAPP statute (§ 425.16) creates a procedural mechanism for quickly disposing of "SLAPPs"[2]—that is, meritless claims based on a person's "valid exercise of constitutional rights." (*PrediWave Corp. v. Simpson Thatcher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1217.) The statute "posits . . . a two-step process for determining whether an action is a SLAPP. First, the trial court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's [claim] fits one of the categories spelled out in section 425.16, subdivision (e)' [Citation]. If the court finds such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) In determining whether the challenged cause of action arises from protected activity, "a court must consider the pleadings and any supporting and opposing affidavits stating the facts upon which liability is based." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443-444 (*Gerbosi*).)

Lo is on appeal challenging only the trial court's ruling under section 425.16, subdivision (e)(2), not its ruling under subdivision (e)(4). We review this ruling de novo. (*HMS Capital, Ins. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

Pursuant to section 425.16, subdivision (e)(2), a claim is "protected activity" and thus subject to the anti-SLAPP statute if it arises from "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) This definition can reach "'communications prepatory to or in anticipation of the bringing of an action . . .'" (*Neville v. Chudacoff* (2008) 160

---

[2]    "SLAPP" is short for Strategic Lawsuit Against Public Participation.

Cal.App.4th 1255, 1268 (*Neville*), quoting *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824), but only if a communication "'[(1)] relates to the substantive issues in the litigation and [(2)] is directed to persons having some interest in the litigation.'" (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 373 (*City of Costa Mesa*), quoting *Neville*, at p. 1266; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1167; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 962.)

Lo's email does not satisfy this test for prelitigation communications. Although some of the email's content "relates to the substantive issues in the litigation" and even alludes to the future filing of a lawsuit, the email also accuses Ma of conduct that Lo never raises in his subsequent lawsuit. What is more, this additional conduct—ranging from taking kickbacks to firing whistleblowers to lying to federal officials—is just as inflammatory, if not more, than the conduct that ultimately ended up in Lo's complaint. We accordingly have serious doubts that Lo's email, as a whole, "relates to the substantive issues in the litigation."

However, we need not definitively resolve this issue because Lo's email was not "directed to persons having some interest in the litigation." To be sure, a prelitigation communication need not be directed to a future party to that litigation in order to be protected activity. (*Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 136; *Neville*, *supra*, 160 Cal.App.4th at p. 1270.) But the recipient(s) must have *some* involvement or interest in the forthcoming litigation. As a result, courts have concluded that the anti-SLAPP statute reaches a prelitigation letter sent to a company's customers warning them not to have contact with a former employee who misappropriated trade secrets (*Neville*, at pp. 1259, 1267-1268); a prelitigation email sent to a company's customers "who had some involvement in the parties' [prior] litigation" advising them of the company's competitor's litigation-related misconduct (*Contemporary Services Corp. v. Staff Pro. Inc.* (2007) 152 Cal.App.4th 1043, 1050, 1054-1055); a prelitigation letter sent by a homeowners' association to homeowners advising them of cost increases due to one

5

homeowner's refusal to grant access to her property (*Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 3-6); prelitigation statements made to exhibitors of a film advising them of a dispute over the rights to distribute that film (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887-888); a prelitigation letter soliciting contributions to fund the anticipated litigation (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 821-822, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5); prelitigation statements made by city employees to applicants seeking licenses on property warning them of pending litigation regarding that property (*City of Costa Mesa*, *supra*, 214 Cal.App.4th at pp. 374-375); and prelitigation statements made to a company's human resources staff reporting harassment (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 944-945).

In this case, the recipients of Lo's email had *no* interest in the subject of Lo's lawsuit. They were not involved in the Monterey Park, Alhambra, and Hemet projects; they had not been involved in any prior litigation between Lo and Ma; they were not funding the litigation; and the outcome of the litigation would have no effect on them. They were simply members of the "real estate development community" who might or might not work with Ma in the future. At oral argument, Lo suggested that the email recipients had an "interest in the litigation" because, as people know who Ma, they could potentially be called as character witnesses. However, the same could be said of anyone who knows Ma. Because this argument defines the requirement of "interest" so broadly as to make it meaningless, we decline to adopt that definition. Because the email was not "'directed to persons having some interest in the litigation'" (*City of Costa Mesa*, *supra*, 214 Cal.App.4th at p. 373), the trial court correctly concluded that the anti-SLAPP statute did not apply, and thus properly denied Lo's anti-SLAPP motion.

## II. Attorney's Fees

The anti-SLAPP statute empowers a court to award "reasonable attorney's fees" if it finds, among other things, that an anti-SLAPP motion is "frivolous." (§ 425.16, subd. (c)(1)). "Frivolous in this context means that any reasonable attorney would agree

6

the motion was totally devoid of merit." (*Gerbosi*, *supra*, 193 Cal.App.4th at p. 450.) We review the trial court's finding of frivolity for an abuse of discretion. (*Ibid.*)

The trial court did not abuse its discretion in finding Lo's anti-SLAPP motion to be frivolous. As the court noted, the allegations in Ma's cross-complaint indicated that the email's recipients had no connection with Lo's lawsuit. What is more, Lo elected not to adduce any evidence to prove to the contrary, and did not try to explain in his anti-SLAPP motion what connection the email recipients had. Indeed, he does not even do so on appeal. Under these circumstances, the court did not abuse its discretion in concluding that the anti-SLAPP motion was frivolous.

## DISPOSITION

We affirm. Ma is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
CHAVEZ

7