Filed 1/6/16  WHGC v. Van Loben Sels CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WHGC, A PROFESSIONAL LAW CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN D. VAN LOBEN SELS et al.,<br><br>    Defendants and Appellants. | G051302<br><br>(Super. Ct. No. 30-2014-00742585)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Horvitz & Levy, Jeremy B. Rosen and John F. Querio; Stephens Friedland and Todd G. Friedland, for Defendants and Appellants.

FitzGerald Yap Kreditor, Michael J. FitzGerald, Eric P. Francisconi and Natalie N. FitzGerald for Plaintiff and Respondent.

# INTRODUCTION

Respondent WHGC, a professional law corporation, sued two of its former attorneys, appellants John Van Loben Sels and Jennifer Shih, after Van Loben Sels and Shih decamped to join a competing law firm, Fish and Tsang, LLP (the Fish firm). WHGC alleged that Van Loben Sels and Shih took confidential information with them to the Fish firm. WHGC was particularly exercised about two e-mails Van Loben Sels sent to current and former clients announcing his and Shih's departure from WHGC and their new employment.

Van Loben Sels and Shih moved to dismiss the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] Specifically, they asserted that the e-mails qualified for protection under section 425.16, subdivision (e)(2), a writing made in connection with an issue under review by a judicial body, and subdivision (e)(4), free speech in connection with an issue of public interest. The trial court denied the motion.

We affirm the order denying the motion. Van Loben Sels and Shih did not carry their burden of showing the confidential information they are accused of misappropriating either was connected to an issue under review by a judicial body or included speech in connection with an issue of public interest. The e-mails themselves were not protected by either aspect of the anti-SLAPP statute.

# FACTS

Van Loben Sels' and Shih's employment with WHGC began in 2009 and 2013 respectively. The two lawyers quit WHGC in August 2014 to open a northern

---

[1] "SLAPP" is an acronym for "strategic lawsuits against public participation," and refers to a lawsuit which both arises out of defendants' constitutionally protected expressive or petitioning activity, and lacks a probability of success on the merits. (Code Civ. Proc., § 425.16; *S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 377.)

All further statutory references are to the Code of Civil Procedure.

2

California office for the Fish firm, allegedly a competitor of WHGC. Before leaving WHGC, Van Loben Sels sent two e-mails announcing his and Shih's resignation from WHGC and their employment with the new firm. Van Loben Sels later stated he sent the e-mails to 16 clients and former clients, seven of whom had litigation pending at the time he and Shih resigned from WHGC.

The e-mails announced in general terms that the departing lawyers would be opening the Silicon Valley office of the Fish firm. The e-mails gave the date upon which the new office would open. The second e-mail informed the recipients that "you have the right to choose the law firm and the attorneys with whom you work." Van Lobel Sels undertook to "support any necessary transition," whether the clients elected to stay with WHGC or move to the Fish firm. He closed by giving the new e-mail addresses and phone numbers for the lawyers moving to the Fish firm.

WHGC sued Van Loben Sels, Shih, and the Fish firm for breach of contract and various torts, including misappropriation of trade secrets and interference with contractual relations and with prospective economic advantage. The gravamen of the complaint was that Van Loben Sels and Shih had used confidential information belonging to WHGC to divert clients to the Fish firm and to compete with WHGC. WHGC also alleged that Van Loben Sels and Shih failed to enter items such as hearings and settlement conferences into the firm calendar, so WHGC was unaware of these pending matters. As to Van Loben Sels alone, WHGC alleged he did not submit his August 2014 timesheets and expenses and he obtained "property, assets, and confidential and proprietary information belonging to WHGC" with the aid of Shih and the Fish firm.

Van Loben Sels and Shih moved to strike the complaint under section 425.16, asserting that the e-mails were made in connection with an issue under review by a judicial body and furthered their right of free speech in connection with an issue of public interest. The trial court denied the motion, holding that the e-mails did not qualify

3

for protection under either anti-SLAPP subdivision. Van Loben Sels, Shih, and the Fish firm appealed from this ruling.

## DISCUSSION

**I.          Appeal by the Fish Firm**

The Fish firm did not move to strike the complaint under the anti-SLAPP statute; the notice of motion identified only Van Loben Sels and Shih as the moving parties. The trial court's order denying the motion did not include the Fish firm.[2] Nothing in the record indicates that the Fish firm joined in the individual lawyers' motion. The register of actions records the motion as being filed only by the two lawyer-defendants.

The Fish firm is not an "aggrieved party" in this matter (see § 902) and has no standing to appeal. The appeal of the Fish firm is therefore dismissed. (See *Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1317, fn. 1.)

**II.          Appeal by Van Loben Sels and Shih**

Van Loben Sels and Shih moved to strike the complaint under the anti-SLAPP statute, section 425.16. They argued that their conduct fell under the protection of subdivisions (e)(2) (an issue under review by a judicial body) and (e)(4) (free speech concerning an issue of public interest.)[3]

The California Legislature enacted the anti-SLAPP statute to counteract "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) A court may order a cause of action "arising from any act" "in

---

[2]          The Fish firm participated in the anti-SLAPP motion's reply brief.

[3]          Section 425.16, subdivision (e) provides in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with . . . an issue of public interest."

furtherance" of the "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" to be stricken by means of this special motion. (§ 425.16, subd. (b)(1).)

We use a two-part test to evaluate an anti-SLAPP motion. First, we determine whether the complaint or cause of action is "one arising from protected activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) As the Supreme Court has emphasized, "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Id.* at p. 89.) If the defendant satisfies the first part of the test, the burden shifts to the plaintiff to demonstrate a probability of prevailing. (*Id.* at p. 88.) Although the plaintiff does not have to prove its case at this juncture, it must present a prima facie case that could sustain a judgment if its evidence were believed. (*Id.* at pp. 88-89.) We exercise our independent judgment to determine both whether the anti-SLAPP statute applies and whether the plaintiff has established a probability of prevailing on the merits. (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1544.)

In assessing whether the anti-SLAPP statute applies, "we disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action . . .' . . . [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*).)

Although the anti-SLAPP motion focused on the two e-mails announcing the change in law firms, the complaint actually alleged broader misconduct. The complaint alleged misappropriation in general terms, not limited to e-mails. In responses

5

to special interrogatories, WHGC identified its trade secrets as "the firm's clients, the names of contacts within each client, the cases for which the clients retained WHGC's services, a history of past and current services provided for the clients by WHGC, and financial information concerning each client." None of the interrogatories included in the motion asked WHGC to identify confidential information that was *not* a trade secret, so there is no information regarding misappropriated items in this category. Moreover, WHGC alleged Van Loben Sels had made off with WHGC's "property, assets, and confidential and proprietary information" and had failed to turn in his timesheets and expenses for August 2014.[4]

The e-mails themselves also do not qualify for anti-SLAPP protection. To be subject to appellants' special motion to strike as appellants defined the issues, the causes of action based on the e-mails must arise from a written statement or writing "made in connection with an issue under consideration or review by a . . . judicial body" or arise from conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with . . . an issue of public interest." (§ 425.16, subds. (e)(2), (e)(4).)

Appellants argue the e-mails qualify for anti-SLAPP protection because they "plainly discussed those clients' right to choose which counsel should continue to handle each of their pending litigation matters in various courts." According to appellants, this right brings the communications under the anti-SLAPP umbrella both as being under review by a judicial body *and* an issue of public interest. Not so.

In the first place, Van Lobens Sels and Shih admit that the majority of the e-mail recipients – nine out of sixteen – were *former* clients, ones who had no pending litigation matters with WHGC. The e-mails to these former clients could not possibly

<hr>

[4] Depending on the amount of work Van Loben Sels had done for WHGC in August, this alleged failure could result in a significant loss for the firm. WHGC could not bill its clients for this work without the timesheets.

qualify for protection under the "review by a judicial body" subdivision of the anti-SLAPP statute. Likewise, as to these former clients, the e-mails could not have furthered their right of petition in connection with an issue of public interest. Appellants presented no evidence that any of these former clients had litigation in progress involving an issue of their choice of counsel. They presented no evidence that any former client was involved in litigation at all.

In essence, the entire anti-SLAPP argument – appellants' basis for dismissing the entire complaint – hangs on the seven e-mails sent to current WHGC clients. Appellants claim these e-mails qualify for anti-SLAPP protection under the two subdivisions of section 426.16 identified above.

None of the seven e-mails identified or alluded to or referred to any "issue" under review or consideration by a judicial body. In this they differ from the communications in the cases appellants cite as supporting their position. In *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, a law firm sued an outside lawyer for poaching its client. The court held that the firm's "causes of action arise directly from communications between [the client] and [the lawyer] about the pending lawsuits against [the client]," (*id.* at p. 489), specifically communications regarding a settlement that was about to collapse and the client's wish to enforce the settlement agreement. (*Id.* at p. 486.) In *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, the communication was a letter from a homeowners association's lawyers to the association members informing them of pending litigation involving the association. (*Id.* at pp. 5-6.) The protected activity in *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, was the filing of an unlawful detainer action, service of the notice to quit, and statements made by the landlord's agent to the about-to-be-evicted tenants regarding the unlawful detainer. (*Id.* at p. 1479.) The communication in *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809 (disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53) was a letter that, in part,

7

exhorted shorthand court reporters to contribute to a fund supporting litigation against certain insurance companies who hired only reporters belonging to a special group. (*Id.* at pp. 814, 821-822.)

The circumstances of this case are, instead, closer to those of cases in which litigation is lurking in the background, but is not involved in the gravamen of the complaint. For example, in *Hylton, supra,* a client sued his attorney for giving false advice to induce the client to pay an excessive fee. (*Hylton, supra,* 177 Cal.App.4th at p. 1274.) The court denied the attorney's anti-SLAPP motion because he "has cited no pertinent authority suggesting a client's action against his or her attorney . . . is subject to the anti-SLAPP statute merely because some of the allegations refer to the attorney's actions in court." (*Id.* at p. 1275.) In *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, the gravamen of the complaint was that attorneys concealed their simultaneous representation of two adversarial clients. "That the concealment occurred in the context of litigation does not change this result, as it is clear that any litigation activity is only incidental to plaintiffs' allegations of wrongdoing." (*Id.* at p. 1391; see *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 703 [attorney's cause of action against another attorney for malpractice indemnity not subject to anti-SLAPP motion]; *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 189-190 [court reporter's suit to collect deposition fees not subject to anti-SLAPP motion]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732 [allegations of protected activity incidental to allegations of breach of contract, negligence, and breach of fiduciary duty].)

Appellants' e-mails, announcing their move from one law firm to another, have no connection with any issue under review by a judicial body.[5] "A statement is made 'in connection with' a proceeding . . . if it relates to substantive issues in the

---

[5] Whether appellants had an ethical duty to notify their clients regarding their change of law firm is not relevant to the analysis of the first prong – whether the activity is protected. It goes rather to the plaintiff's likelihood of prevailing.

8

proceeding and is directed to persons having some potential interest in the proceeding." (Burke, Anti-SLAPP Litigation (The Rutter Group 2015) § 3:76 p. 3-40.1.) Announcing a move from one law firm to another and reassuring clients that their matters will not slip through the cracks during the transition is not related to a substantive issue in their lawsuits.

Similarly, appellants have identified as the "issue of public interest" the right of clients to choose the lawyers who will represent them. This issue could pertain only to those seven clients who were involved in pending litigation, not to the entire list of e-mail recipients, as to most of whom appellants presented no evidence of their involvement in any lawsuits.

Again, we look to the "principle thrust and gravamen" of WHGC's complaint, which was that Van Loben Sels and Shih used confidential information to siphon off WHGC's clients. Although a client's right to choose his or her counsel may be an issue of public interest, the e-mails did not deal with this issue. Instead, they focused on whether seven of the 16 recipients were going to stay with WHGC or follow Van Lobel Sels to the Fish firm as portable business. This is a private matter, not one that involves the public at large or a significant section of the public. (See, e.g., *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 831 [individual claims against insurer private, even though insurance and wildfires matters of public interest]; *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 275 [business dispute mentioning incidental protected activity not subject to anti-SLAPP statute]; *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1569-1572 [connection between amorphous public interest and specific speech insufficient].)

Van Loben Sels and Shih failed to carry their burden to show that the conduct alleged in the complaint was an act in furtherance of their right of petition or of free speech in connection with a public issue or an issue under review by a judicial body. "[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an

9

act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.)  The e-mails did not relate to a substantive issue in any of the pending lawsuits, and the issue they raised was not the general one of a client's right to the counsel of his or her choice but rather the purely private one of whether *these* clients would stay with WHGC or take their business to the Fish firm.  No right of petition or free speech is jeopardized by the WHGC complaint, and thus the burden never shifted to WHGC to show a probability of prevailing.  The trial court correctly denied Van Loben Sels' and Shih's anti-SLAPP motion to strike.

## DISPOSITION

The order denying the anti-SLAPP motion as to appellants Van Loben Sels and Shih is affirmed.  The appeal of the Fish firm is dismissed.  Respondent is to recover its costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

10