Filed 8/31/22  Leizorto v. Corvino CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LEIZORTO, LLC, et al., | B313565 |
| Cross-complainants and Appellants, | (Los Angeles County Super. Ct. No. 20STCV14055) |
| v. | |
| RONALD CORVINO et al., | |
| Cross-defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Rupert Byrdsong, Judge.  Affirmed.

Law Offices of Lloyd S. Pantell, Lloyd S. Pantell; and Michael Mendelson for Cross-complainants and Appellants.

FitzGerald Kreditor Bolduc Risbrough, Eoin L. Kreditor and Brook J. Changala for Cross-defendants and Respondents.

No appearance for Cross-defendants and Respondents John Finton and Steven Duddy.

Cross-complainants and appellants Leizorto, LLC (Leizorto) and Chandra Kusmanto (collectively, appellants) appeal from the judgment entered in favor of cross-defendants and respondents Ronald Corvino, individually and as trustee of the Ronald Corvino Separate Property Family Trust dated March 25, 2015, Eoin Kreditor, FitzGerald Kreditor Bolduc Risbrough LLP (FKBR),[1] Pedram Cohen, and Summit View Luxe, LLC (Summit View) (collectively, respondents), awarding respondents $23,855.50 in attorney fees after the trial court granted respondents' special motion to strike, under Code of Civil Procedure section 425.16,[2] portions of appellants' cross-complaint and dismissing with prejudice their cause of action for fraud and deceit.  Appellants also appeal from the order granting the anti-SLAPP motion.  We affirm the judgment and the order granting the anti-SLAPP motion.

## BACKGROUND

**The parties and the properties**

Corvino, as trustee, is the owner of real property located at 1731 Summitridge Drive in Los Angeles, California.  Summit View is a California limited liability company doing business at 1731 Summitridge.  Kreditor is an attorney who represents Corvino and Summit View.  FKBR is Kreditor's law firm.

---

[1]  FKBR was formerly known as FitzGerald Yap Kreditor LLP.

[2]  All further statutory references are to the Code of Civil Procedure, unless stated otherwise.  Section 425.16 is sometimes referred to as the anti-SLAPP statute.  SLAPP is an acronym for strategic lawsuit against public participation.

Leizorto is a California limited liability company that owns 1735 Summitridge Drive, a property directly north of and contiguous to 1731 Summitridge. Christopher Tanuwidjaja is the owner and operator of Leizorto. Kusmanto manages 1735 Summitridge.

**Respondents' action and appellants' cross-action**

In April 2020, Corvino, as trustee, and Summit View sued Leizorto, Tanuwidjaja, and Kusmanto. The first amended complaint (FAC) alleges that while remodeling 1731 Summitridge, Corvino obtained approval to install a new sewer line to connect to the municipal main sewer line. The main sewer line is located on a utility easement in favor of the City of Los Angeles (the City). The FAC further alleges that when installing the new sewer line, Corvino discovered that an unpermitted sewer line from 1735 Summitridge was connected to the main sewer line. The City instructed Corvino to cap the unpermitted sewer line from 1735 Summitridge before installing the new line for 1731 Summitridge. Because capping the sewer line would be problematic for the owners and occupants of 1735 Summitridge, Corvino contacted Kusmanto so that Leizorto could take appropriate steps to protect its property. The FAC further alleges that on June 16, 2019, Kusmanto, on behalf of Leizorto, agreed to remove the unpermitted sewer line at Leizorto's expense. The FAC alleges that Leizorto breached the agreement to remove the unpermitted sewer line and asserts claims for breach of contract, specific performance, nuisance, breach of implied warranty of authority, and fraud in the inducement.

Appellants answered the FAC and cross-complained against respondents and John Finton and Steve Duddy. The operative first amended cross-complaint (FACC) asserts causes of

3

action for fraud and deceit, negligent misrepresentation, intentional and negligent interference with contractual relationships, interference with prospective economic relations, trespass, abuse of process, violation of Government Code section 36900, subdivision (a), nuisance, and declaratory relief.

The FACC alleges that Corvino's attorneys, Kreditor and FKBR, in a September 18, 2019 letter to appellants, made intentionally false representations about the allegedly unpermitted sewer line. Kreditor's September 18, 2019 letter states that FKBR represents Corvino and Summit View, that in the course of obtaining a permit to install a new sewer line on the 1731 Summitridge property, Corvino discovered that 1735 Summitridge has an illegal sewer line connected to the municipal main sewer line. The letter states in relevant part:

> "The illegal sewer line constitutes an immediate health and safety concern because, given its age, size and condition, it may burst at any time, causing substantial harm to the hillside and to all homes below. The City of Los Angeles is instructing Corvino to cap the 1735 Summitridge illegal sewer line before it installs the new sewer line."

The letter further states that Kusmanto, acting as Leizorto's agent, agreed to have the illegal sewer line removed at Leizorto's expense. The letter asks Leizorto to confirm that agreement in writing and advises Leizorto that Corvino intends to proceed with installation of a new sewer line for 1731 Summitridge and to cap the existing sewer line from 1735 Summitridge. The letter warns Leizorto that "[a]ny losses or damages incurred as a result of such activities will be your responsibility, and you will be acting at your own peril."

Appellants' cross-claim against respondents for fraud and deceit is based on alleged misrepresentations in Kreditor's September 18, 2019 letter. In their first cause of action for fraud, appellants allege that Kreditor, acting in concert with, and with the consent of the other respondents, made false representations in the September 18, 2019 letter about the sewer line at 1735 Summitridge. The letter was sent to appellants and to the tenant then residing in 1735 Summitridge.

The FACC alleges that the representations in the September 18, 2019 letter were false. The FACC states that a January 23, 2012 certificate of occupancy issued to Leizorto's predecessor in interest after the existing home was remodeled shows that the City approved the sewer connection from 1735 Summitridge and attaches a copy of the January 23, 2012 certificate of occupancy as an exhibit.

The FACC further alleges that upon receipt of the September 18, 2019 letter the tenant at 1735 Summitridge vacated the property, and appellants relied on the representations contained in the letter to their financial detriment by not re-leasing the property until they verified the representations were false.

In addition to the allegations in the fraud cause of action, the FACC expressly references or incorporates by reference the September 18, 2019 letter in paragraphs 25, 48, 58, 63, 66, 71, 77, 82, 86, 89, 93, 108, 109, 121, and 128 of the FACC.

**Anti-SLAPP motion**

Respondents filed an anti-SLAPP motion, seeking to strike or dismiss the fraud cause of action and all allegations in the FACC based on the September 18, 2019 letter. Respondents argued that the September 18, 2019 letter was an act in

furtherance of the right of petition under section 425.16, subdivision (e)(1) and (2) and protected by the litigation privilege set forth in Civil Code section 47, subdivision (b).  The anti-SLAPP motion was supported by, among other things, a declaration by Kreditor stating that his September 18, 2019 letter "was prepared and sent in anticipation of litigation."  Respondents requested an award of attorney fees and costs against appellants in the amount of $23,855.50.

Appellants opposed the anti-SLAPP motion, arguing that the September 18, 2019 letter was not protected by section 425.16 because it did not concern a "public issue" or issue of "public interest," but a private dispute between the parties.[3]  Appellants also claimed their use of the September 18, 2019 letter in the FACC was "evidentiary only," as it showed Kreditor's complicity in "a conspiracy to 'take' [Leizorto's] property unlawfully."  Appellants further argued the litigation privilege did not apply because Kreditor's letter contained false statements.  Appellants' opposition was supported by the declaration of their attorney, Michael Mendelson, who cited his previous legal experience and opined that respondents' motion was frivolous.  Appellants subsequently filed a supplemental memo to their opposition in which they argued the September 18, 2019 letter contained false statements.

Respondents' reply to appellants' opposition included a September 20, 2019 e-mail to Kusmanto from Tao Yang, a civil engineer with the City's Department of Public Works.  The e-mail states:

> "The old connection on 1735 [Summitridge] was an unpermitted connection that was crossing the

---

[3]     Appellants do not reassert this argument on appeal.

6

neighbor's lot without easement and was a potential environmental hazard.

"We gave permission to the contractor of 1731 [Summitridge] to provide a wye[4] . . . in the new sewer mainline that they are construction [*sic*], so that 1735 [Summitridge] can reconnect their sewer legally at the new location."

At the April 6, 2021 hearing on the anti-SLAPP motion the trial court stated its tentative ruling to grant the motion, heard argument from counsel, and adopted its tentative ruling. The April 6, 2021 minute order states that the trial court granted respondents' motion to strike the first cause of action and select allegations of the FACC. The trial court also granted respondents' request for attorney fees and costs against appellants in the amount of $23,855.50.

A judgment in respondents' favor was entered on June 8, 2021 awarding them attorney fees under section 425.16, subdivision (c)(1) in the amount of $23,855.50. This appeal followed.

## DISCUSSION

**I.    Applicable law and standard of review**

Section 425.16, subdivision (b)(1) provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the

---

4      Respondents believe "wye" refers to a "wye connection," a Y-shaped fitting solution that joins three pipes together.

7

plaintiff has established that there is a probability that the plaintiff will prevail on the claim." A special motion to strike under section 425.16 may be directed not only to causes of action arising out of protected activity, but also to specific allegations of protected activity within a pleaded claim for relief that also includes allegations of unprotected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395.)

Determining whether the statute bars a given cause of action or allegation requires a two-step analysis. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the court must decide whether the party moving to strike has made a threshold showing that the cause of action or allegation "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); accord, *Navellier*, at p. 88.) If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); accord, *Navellier*, at p. 88.) In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741 (*Jarrow*).)

We review de novo a trial court's order granting a special motion to strike under section 425.16. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

8

## II. Protected activity

Section 425.16, subdivision (e) defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).) Statements, writings and pleadings in connection with civil litigation come within this category of speech and conduct protected by the anti-SLAPP statute. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5.) Statements made in anticipation of civil litigation also fall within this category. (*Briggs*, at p. 1115.) If a statement comes within the category of activities protected under section 425.16, subdivision (e)(1) and (2), a defendant moving to strike a cause of action or allegation based on that statement need not show that the statement was made in connection with a public issue. (*Briggs*, at p. 1123.)

An attorney-defendant may invoke the protections of the anti-SLAPP statute when sued for communicative conduct while representing clients in litigation. (See, e.g., *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) "Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per

se protected as petitioning activity by the anti-SLAPP statute." (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480.)

In deciding whether a defendant has satisfied the initial burden of establishing that the challenged acts arise from protected activity under section 425.16, a court considers "'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Navellier, supra*, 29 Cal.4th at p. 89.)

Examination of the pleadings, declarations, and documentary evidence submitted in this case shows that appellants' cause of action for fraud and deceit is premised upon Kreditor's representation of Corvino and Summit View in anticipation of a lawsuit against appellants. Kreditor's declaration filed in support of the anti-SLAPP motion confirms that his September 18, 2019 letter "was prepared and sent in anticipation of litigation." As a general rule, a demand letter or other communication sent in anticipation of litigation constitutes speech or petitioning activity protected under the anti-SLAPP statute. (*Briggs, supra*, 19 Cal.4th at p. 1115.)

The gravamen of appellants' fraud and deceit cause of action is alleged false statements contained in Kreditor's September 18, 2019 letter. The September 18, 2019 letter is attached as an exhibit to the FACC. Paragraph 48 of the FACC quotes portions of the letter referring to the health and safety concerns presented by the illegal sewer line from Leizorto's property and asks Leizorto to cap the illegal sewer line in accordance with the parties' previous agreement to do so. Paragraphs 49 through 57 of the FACC further allege that the statements made in the September 18, 2019 letter were false, that Kreditor and FKBR owed appellants a legal duty to refrain

10

from making false statements, and that appellants relied on the false statements to their financial detriment and damage. Appellants' fraud cause of action is thus premised on Kreditor's communicative acts performed in his representation of Corvino and Summit View in anticipation of litigation—protected petitioning activity under section 425.16, subdivision (e)(1) and (2).

We reject appellants' argument that the September 18, 2019 letter is evidence of a conspiracy to take their property unlawfully and, therefore, not protected speech or conduct under section 425.16. Conclusory allegations of conspiracy do not deprive Kreditor's communicative acts of their protected status. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 413 (*Contreras*).) The FACC does not allege a conspiracy to take appellants' property. The only conspiracy alleged is one "to fraudulently induce [Leizorto] to grant and pay for a sewer connection." The only fraudulent conduct alleged is the September 18, 2019 letter. That letter is the sole basis for appellants' fraud and deceit cause of action. It is not merely incidental or collateral to that cause of action, nor is it merely evidence of conspiratorial conduct.

Appellants' reliance on *Spencer v. Mowat* (2020) 46 Cal.App.5th 1024 (*Spencer*) as support for their position is unavailing. The plaintiffs in *Spencer* sued certain defendants for their participation in a conspiracy to intimidate and harass visitors to keep them away from a popular surfing beach. The causes of action alleged included assault, battery, and public nuisance. (*Id.* at p. 1029.) The complaint alleged that two defendants were liable as coconspirators because although they did not personally participate in the tortious conduct, they incited others to do so by sending group text messages to the other

11

defendants whenever the plaintiffs appeared at the beach. (*Id.* at pp. 1030-1031.) The coconspirator defendants filed anti-SLAPP motions, which the trial court denied. The appellate court in *Spencer* concluded the anti-SLAPP motions were properly denied because the acts in which the defendants were alleged to have conspired—intimidation, harassment, threats, rock-throwing, and theft—were not protected speech or petitioning activity. (*Id.* at p. 1040.)

Here, in contrast, the tortious conduct in which respondents are alleged to have conspired is itself protected activity under section 425.16. The allegedly false statements contained in the September 18, 2019 letter constitute protected speech and petitioning activity. (§ 425.16, subd. (e)(1), (2); *Briggs, supra*, 19 Cal.4th at p. 1115; *Contreras, supra*, 5 Cal.App.5th at p. 416.) *Spencer* is accordingly inapposite.

Respondents met their burden of demonstrating that appellants' cross-claim for fraud and deceit is premised on the September 18, 2019 letter, which constitutes protected speech or petitioning activity under section 425.16. The burden accordingly shifted to appellants to establish a probability of prevailing on the merits.

## III. Probability of prevailing

To meet their burden of demonstrating a probability of prevailing on their cross-claim for fraud and deceit, appellants must show that their cross-claim is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence they submitted is credited. (*Jarrow, supra*, 31 Cal.4th at p. 741.) Appellants failed to do so.

"The elements of fraud that will give rise to a tort action for deceit are: "'(a) misrepresentation (false representation,

12

concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"'" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.)  The absence of any of these required elements precludes recovery. (*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 101.)

Appellants failed to present evidence to support the requisite elements of their fraud cross-claim.  The 2012 certificate of occupancy appellants presented as evidence that representations in the September 18, 2019 letter about the 1735 Summitridge sewer line were false does not establish that respondents' representations were false or that respondents knew they were false at the time they were made.  Appellants also failed to establish that respondents made those representations with the intent to defraud.  Respondents, on the other hand, presented evidence, in the form of a September 2019 e-mail to Kusmanto from city engineer Yang, that the 1735 Summitridge sewer line was unpermitted and a potential hazard.  Because appellants cannot establish the requisite elements of fraud, they failed to demonstrate a probability of prevailing on their cause of action for fraud and deceit.

Appellants also cannot establish a probability of prevailing because their fraud claim is premised on the September 18, 2019 letter, and that letter is protected by the litigation privilege.  The litigation privilege is codified in Civil Code section 47:  "[a] privileged publication or broadcast is one made . . .  [¶]  . . . [¶] [i]n any . . . judicial proceeding . . . ."  (Civ. Code, § 47, subd. (b).) "'[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

13

litigation; and (4) that have some connection or logical relation to the action.  [Citations.]'  [Citation.]  Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation].  It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."  (*Rusheen, supra*, 37 Cal.4th at p. 1057.)

The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, 323 (*Flatley*).)  The litigation privilege is an "absolute" privilege, and it bars all tort causes of action except claims of malicious prosecution and conduct that constitutes criminal extortion as a matter of law.  (*Id.* at pp. 322, 333.)  The privilege has also been held to apply to "statements made prior to the filing of a lawsuit." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361.)

The litigation privilege applies to Kreditor's September 18, 2019 letter.  The letter was sent in anticipation of litigation.  It concerns the subject of the anticipated lawsuit and Corvino's and Summit View's litigation objective—enforcement of Leizorto's agreement to remove its unpermitted sewer line.

Appellants contend the litigation privilege does not apply because the September 18, 2019 letter contains false statements. The law, however, is to the contrary.  (See *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920 ["communications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal"].)  As discussed, the litigation privilege is absolute, and it bars all tort causes of

14

action except claims of malicious prosecution and conduct that constitutes criminal extortion as a matter of law.  (*Flatley, supra*, 39 Cal.4th at p. 322.)

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, which appellants cite as support for their position, is distinguishable.  Contrary to appellants' suggestion, *Shafer* does not apply a blanket rule that the litigation privilege is inapplicable to an attorney's allegedly fraudulent statements.  The court in that case held that the litigation privilege did not shield an attorney from liability for fraudulent statements about the scope of insurance coverage in a letter to the judgment creditor of the insured seeking to exercise his rights under Insurance Code section 11580.  That statute allows a judgment creditor of an insured to sue the insurer under the insured's policy to recover on a judgment.  (Ins. Code, § 11580, subd. (b)(2); *Shafer*, at pp. 80-81.)  The court in *Shafer* explained that "[t]he litigation privilege is not a license to deceive an injured party who steps into the shoes of the insured. . . . Section 11580 [of the Insurance Code] grants an injured party the right to file suit in order to recover under the insurance policy. Coverage counsel may not commit fraud in an attempt to defeat that right.  And to the extent there is a conflict between an injured party's rights under section 11580 and coverage counsel's reliance on the litigation privilege [citation], the rights of the injured party prevail as they arise under the more specific of the two statutes." (*Shafer*, at p. 81.)  This case does not involve Insurance Code section 11580.  *Shafer* accordingly is inapposite.

Appellants make several arguments on appeal that they did not assert in the trial court below:  (1) Respondents lack standing under section 425.16 because they have no primary

15

right to support the breach of contract cause of action in the FAC; (2) no valid contract exists; (3) certain allegations were not properly identified in the special motion to strike; (4) the September 18, 2019 letter constitutes extortion; (5) the fees requested in the anti-SLAPP motion were unreasonable; (6) Corvino violated the Los Angeles Municipal Code; (7) respondents' breach of contract action is an artifice to mislead the court, in violation of Business and Professions Code section 6068, subdivision (d); and (8) the unclean hand doctrine bars respondents from obtaining relief.  Appellants forfeited these arguments, which were not raised in the trial court below.  (See *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 [appellate courts generally will not consider matters presented for first time on appeal]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381 [failure to raise issue in trial court waives or forfeits issue on appeal].)

The trial court did not err by granting the anti-SLAPP motion.

## DISPOSITION

The judgment is affirmed as is the order granting the anti-SLAPP motion.  Respondents shall recover their costs on appeal.

_____
CHAVEZ, J.

We concur:

_____          _____
LUI, P. J.                                      HOFFSTADT, J.

16